UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROSEMARY J. HOWARD, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, )<br>)<br>Defendant. ) | No. 1:14-cv-00856-TWP-MJD |

**REPORT AND RECOMMENDATION**

Plaintiff Rosemary J. Howard ("Howard") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For reasons set forth below, the Magistrate Judge recommends the District Judge **AFFIRM** the decision of the Commissioner.

**I.   Background**

Howard filed her application for DIB on June 16, 2011, alleging an onset of disability of December 30, 2010, due mainly to her asthma and back problems. [R. at 16.] Howard's application was denied initially on August 22, 2011 and denied on reconsideration on October 27, 2011. [*Id.*] Howard timely requested a hearing, which was held before Administrative Law Judge Michael Hellman ("ALJ") on September 28, 2012. [R. at 31-75.] The ALJ's November 5, 2012 decision also denied Howard's application for DIB, and on February 18, 2014 the Appeals Council denied Howard's request for review, making the ALJ's decision the final decision for

1

the purposes of judicial review. [R. at 1-10.] Howard timely filed her complaint with this Court on May 27, 2014.

## II. Legal Standard

To be eligible for DIB, a claimant must have a disability, pursuant to 42 U.S.C. § 416. Therein, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 416(i). In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the Commissioner determines that the claimant's impairment does not meet or medically equal any impairment that appears in the Listing of Impairments, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, the claimant is not disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; and (5) if the claimant can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d. 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). This court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether or not substantial evidence

supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Howard met the insured status requirements of the Act through December 31, 2015 and has not engaged in substantial gainful activity since December 30, 2010, the alleged onset date. [R. at 18.] At step two, the ALJ found that Howard's chronic obstructive pulmonary disease, asthma, obesity, and lumbar disc bulge were severe impairments, as defined by the Act. [R. at 18-20.] However, at step three the ALJ found that Howard does not have an impairment that meets or medically equals one of the applicable listed impairments: Listing 1.04A for Disorders of the Spine, Listing 3.02 for Chronic Pulmonary Insufficiency, and Listing 3.03 for Asthma. [R. at 20-21.]

After step three but before step four, the ALJ, after "careful consideration of the entire record," determined that Howard has the residual functional capacity (RFC) to perform "light work" with the exception that she should not "climb ladders, ropes or scaffold" and that she should be "limited to occasional crawling, crouching, kneeling, stooping, and climbing of ramps and stairs" and should "avoid concentrated exposure to extreme cold and heat, humidity, poorly ventilated areas, and environmental irritants." [R. at 21.] At step four, the ALJ found that Howard was "unable to perform any past relevant work" because the requirements of her past work "exceeded her residual functional capacity." [R. at 25.] Finally, at step five, the ALJ,

considering Howard's ability to perform light work, found there were "jobs that exist in significant numbers in the national economy that [she could] perform." [R. at 26.] Based on these findings, the ALJ concluded that Howard is not disabled, as defined by the Social Security Act. [R. at 27.]

## IV. Discussion

Howard raises various issues on appeal: (A) the ALJ should have afforded greater deference to Dr. Potts, the consultative examiner, than the state agency physicians; (B) the ALJ failed to consider Howard's nebulizer and inhaler use in his RFC and step five analysis; (C) the ALJ failed to recognize that Howard's impairments equaled a listing; (D) the ALJ's credibility determination was flawed; and (E) the ALJ failed to consider in his step five analysis Howard's ability to perform actual jobs. The Court will address each of those arguments in turn.

### A. Dr. Potts' Opinion

Howard first argues the ALJ's decision to afford little weight to Dr. Potts' assessment of Howard was not based in substantial evidence. When reviewing medical opinions, an "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); 42. U.S. C. § 405(g). An ALJ must create a logical bridge between the evidence and his conclusions by considering such factors as "the length, nature, and extent of the treatment relationship; the physician's specialty; and the consistency and supportability of the physician's opinion." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). Here, the ALJ gave less weight to Howard's consultative examiner, Dr. Potts, who performed a pulmonary function test and a physical examination. [R. at 24-25, 303-08.] The ALJ explained that Dr. Potts' assessment (which would have limited Howard to a sedentary work level) was less persuasive because: (1) his assessment appeared to be a statement

4

of Howard's minimum capacity and not the most Howard could do; (2) he was not Howard's treating physician; (3) he had only examined Howard once; and (4) his assessment appeared to be based on Howard's subjective history. [R. at 24-25.] In contrast, the ALJ gave great weight to the state agency assessment (which supported a light work level) as well as that of Dr. Li, Howard's treating physician. [R. at 25.]

Howard argues the ALJ did not give substantial justification for giving Dr. Potts' assessment little weight and the state agency's assessment great weight. This argument ignores the fact the ALJ credited the opinion of her treating physician, Dr. Li, who only recommended environmental limitations (related to asthma and COPD) and noted Howard likely could not perform work involving "extended physical duration." [R. at 273.] The ALJ interpreted Dr. Li's restriction as equivalent to a light exertional level restriction and incorporated that into the RFC. As noted above, the ALJ then gave multiple reasons for rejecting Dr. Potts' assessment that Howard was limited to sedentary work. Significantly, Dr. Potts' assessment conflicted with both the treating physician, Dr. Li, and two state agency physicians. An ALJ is entitled to resolve evidentiary conflicts "by giving more weight to some evidence and less to others." *Young v. Barnhart,* 362 F.3d 995, 1001 (2004). The ALJ did not ignore Dr. Potts' opinion, but rather considered it in light of the other evidence before him, as he was required to do. The Court finds substantial evidence supports the weight the ALJ accorded to Dr. Potts' opinion.

### B. Howard's Inhaler and Nebulizer Use

Next, Howard argues the ALJ failed to consider her required use of an inhaler and a nebulizer. Specifically, Howard argues the ALJ failed to build an accurate and logical bridge between her required nebulizer and inhaler use and the ALJ's RFC and step five conclusions. Howard testified that she uses her nebulizer at least three times a day. [R. at 43-45.] She asserts

5

in her brief that these treatments take 10-15 minutes each. [Dkt. 16 at 13.]  The ALJ referenced nebulizer treatments, but Howard argues the ALJ's failure to include adequate break time in the RFC to administer the treatments constitutes reversible error.  The Court disagrees.

While the medical record reflects prescriptions to treat Howard's asthma, there is no support for Howard's assertion that she was required use the nebulizer. Instead, the records reference using the nebulizer *or an inhaler*, which is decidedly less time consuming. [R. 213 and 215.]  The RFC must include *"all* limitations supported by medical evidence in the record." *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002) (emphasis in the original).  Therefore, in absence of evidence that Howard was required to administer time-consuming nebulizer treatments during the work day, the ALJ was not obligated to include such treatments in the RFC.

### C.  Listing Analysis

Next, Howard argues the ALJ failed in his analysis at step three when he found Howard's impairments did not meet a Listing. Specifically, she argues that her asthma attacks were improperly counted, the cumulative effects of her obesity were not considered, and her recent weight gain and spinal nerve displacement should have been reviewed by doctors instead of the ALJ. When reviewing an ALJ's decision at step three, the Court examines the decision as a whole to ascertain whether he considered all of the relevant evidence and gave supporting reasons for his decisions. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. Feb. 11, 2015); *see also Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).

None of Howard's arguments are persuasive. First, the ALJ properly found that even if Howard's June 2009 and October 2010 asthma attacks were counted as two attacks each, the total attacks occurred would be only six, and six attacks over a period of 19 months would still

not qualify Howard's asthma as a listed impairment under Listing 3.03(B). *See* 20 C.F.R., Part 404, Subpart P, App. 1, § 3.03(B) (asthma attacks must occur "at least once every 2 months or at least six times a year"). Similarly, the ALJ was correct in finding that Howard does not successfully show how the effects of her obesity meet an equivalency under Listing 3.00. Even with her morbid obesity, her forced expiratory volume in one second (FEV1) did not reach a value equal to or less than the value set forth in Table 1 of the Listing for an individual of Howard's height. *See* 20 C.F.R., Part 404, Subpart P, App.1, § 3.02(A).

Finally, Howard argues the ALJ's failure to seek an updated medical opinion consider Howard's recent weight gain of an additional 30 pounds as well as her recent displacement of her right L5 nerve root constituted reversible error. SSR 96-6p only requires an ALJ to secure an updated opinion when, "in the opinion of the administrative law judge," new evidence might cause the initial opinion to change. SSR 96-6p; *see also Buckhanon ex rel. J.H. v. Astrue*, 368 Fed. Appx. 674, 679 (7th Cir. 2010). However, evidence concerning Howard's obesity and nerve root displacement was already considered by the ALJ. [R. at 26-27.] Howard argues the ALJ should have sought additional evidence on these issues; however, she identifies no basis for the belief that additional evidence would change the ALJ's opinion. Rather, she offers a string of case citations relating to step three analysis without tying it to the facts at hand. "This method of argumentation is not argumentation at all .... The Court cannot and will not forge new arguments for [the Claimant]." *Poston v. Astrue,* 2010 WL 987734, at *8 (S.D. Ind. 2010). It is plaintiff's burden to demonstrate that her impairments meet or equal a listing. *Ribaudo v. Barnhart,* 458 F.3d 580, 583 (7th Cir. 2006). Based upon the medical record as a whole, the ALJ found Howard's physical impairments did not rise to the level of severity required to be considered

"disabled" under a listing. The Court finds there is substantial evidence to support that conclusion.

### D. Howard's Credibility

Howard argues the ALJ was patently wrong when he questioned the credibility of Howard's testimony and that he based his finding of light work solely on Howard's testified activities. As a reviewing court, "[w]e overturn a credibility determination only if it is patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). An ALJ's finding of credibility "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* Here, the ALJ noted specific evidence and reasons to question Howard's credibility. [R. at 21-25]; *see also Curvin*, 778 F.3d at 651 ("So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong"). For example, Howard testified that she experienced severe back pain. [R. at 21, 47-58.] Yet, as the ALJ noted, X-rays and MRIs of the lumbar spine area revealed only mild scoliosis and a disc bulge with some evidence of displacement of the right L5 nerve root. [R. at 23.] The ALJ noted this was enough to cause pain, but not enough to suggest an inability to perform a restricted range of light work. [*Id.*]

Howard also testified to severe respiratory impairment. [*Id.*] But again, the ALJ found the physicians' diagnostic testing, such as Howard's FEV1 level of 80% of predicted value, did not support the degree of functional limitation alleged by Howard. [R. at 22-23.] The ALJ also considered Howard's testimony to her daily activities and found such "activity and ability to function independently suggests that the claimant's symptoms are manageable and not as limiting as alleged." [R. at 24.] But this statement alone does not suggest, as Howard argues, that the ALJ solely based his finding of light work upon Howard's daily activities. On the contrary,

the examples cited above show the ALJ considered many specific pieces of supporting evidence before deciding to grant her less than full credibility. Thus, the Court finds the ALJ was not patently wrong in his credibility determination.

### E. Step Five Analysis

Finally, Howard argues the ALJ erred at step five when he relied upon the vocational expert's (VE) analysis of the number of jobs in the national economy. Specifically, Howard argues the ALJ did not produce substantial evidence of actual jobs Howard could perform because the ALJ based his decision upon the VE's unreliable job estimate. This issue is not new. Several cases have already brought into question the reliability of job estimation using the *Dictionary of Occupational Titles* (DOT) and the *Occupational Employment Quarterly* (OEQ). *See, e.g., Hill v. Colvin*, 2015 WL 7785561, No. 15-1230, *7-9 (7th Cir. Dec. 3, 2015) (Posner, J., concurring); *Voigt v. Colvin*, 781 F.3d 871, 879-80 (7th Cir. Mar. 26, 2015); *Browning v. Colvin*, 766 F.3d 702, 708-08 (7th Cir. 2014); *Herrmann v. Colvin*, 772 F.3d 1110, 1113-14 (7th Cir. 2014).  As pointed out in *Hill*, *Voigt*, and *Herrmann*, VEs typically rely on the DOT and OEQ for determining job number estimates. *Herrmann*, 772 F.3d at 1113; *Voigt*, 781 F.3d at 879. The OEQ specifically deals with numbers of jobs by categorizing jobs into broad categories containing finer, narrower categories. *Herrmann*, 772 F.3d at 1113-14. The number of jobs in each broad category if supplied by the Census Bureau, but not the finer categories. *Id.* To find the number of jobs in the finer categories, the VE "divides the number of jobs in the broad category by the number of finer categories within the broad category, and the result is his estimate of the number of jobs in the finer category." *Id.* So, "if the broad category contains 10,000 jobs, and there are 20 finer categories within it…the vocational expert would estimate…that there were 500 jobs in that category." *Id.* at 1114.

9

Here, the VE testified that given all the limitations and impairments of Howard, she would be able to perform the requirements of various occupations in the national and local economy, such as usher/ticket taker (236,000 jobs national/2,600 jobs regionally), cashier II (400,000 jobs nationally/10,000 jobs regionally), and assembler II (204,000 jobs nationally/2,400 jobs regionally). [R. at 26, 71-74.] The VE then suggested these numbers be reduced by 50% to accommodate Howard's breathing impairments. [R. at 72-73.] The VE did not testify how he had arrived at these numbers but did testify that his testimony was consistent with the DOT and that his reduction was based upon his experience and job placement activity. [R. at 74.]

Howard now argues the ALJ's decision regarding the number of jobs available is not based upon substantial evidence because the VE's testimony does not fully explain the source of his estimate. She also implies that even if the VE did explain the source of his estimate, he would not be able to provide a reliable source for his numbers because VEs typically rely on the DOT and OEQ, sources which have been criticized for not providing an accurate job estimate, as explained in *Voigt* and *Herrmann*. The Court disagrees that this is reversible error for two reasons. First, Howard did not object to the VE's testimony during the hearing. Courts have found that a VE has no obligation to explain the reliability of his sources, but may give a bottom line of his findings, "provided that the underlying data and reasoning are available on demand." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). It is then the burden of the claimant to question the VE's foundation or reasoning. *Id.* Otherwise, the "ALJ is entitled to accept the vocational expert's conclusion." *Id.* As it stands here, however, Howard did not object or contradict the VE's testimony. Thus, she "forfeited this argument by failing to object to the VE's testimony during the hearing" and "the ALJ was entitled to credit [his] testimony." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009); *see also Hurst v. Colvin*, 2015 WL 4603272, No.

10

1:14-cv-01250-LJM-DML, *12 (S.D. Ind. July 30, 2015) ("The ALJ is entitled to rely on the VE's testimony if it is not questioned at the hearing"). Second, there is no evidence the VE relied solely upon the DOT or the OEQ in his job estimate analysis. The Court cannot assume the VE based his data solely upon these methods, especially when the VE was clear in his testimony that his job estimate was also based on his experience and job placement activity. Thus, for these reasons, the Court finds the ALJ based his findings at step five on substantial evidence and did not err.

## V.  Conclusion

For the aforementioned reasons, substantial evidence supports the ALJ's determination that Howard is not disabled, and the Commissioner's decision should therefore be **AFFIRMED.** Any objections to the Magistrate Judge's Report and Recommendation shall be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely filed objections within fourteen (14) days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  31 DEC 2015

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Meredith Marcus
DALEY DISABILITY LAW, P.C.
mmarcus@fdaleylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov