UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROSEMARY J. HOWARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-00856-TWP-MJD |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ORDER ADOPTING REPORT AND RECOMENDATION**

Plaintiff, Rosemary J. Howard ("Howard"), requests judicial review of the Magistrate Judge's Report and Recommendation, wherein the Magistrate Judge recommended that the final decision be affirmed. For the reasons stated below, the Court overrules Howard's objection, adopts the Magistrate Judge's Report and Recommendation, and denies the motion for remand.

### I.  BACKGROUND

**A.  Procedural History**

On June 16, 2011, Howard filed her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). She alleged disability because of back and respiratory conditions, with an onset date of December 30, 2010. On August 22, 2011, Howard's application was denied, and on October 27, 2011 her application was denied on reconsideration.

On September 28, 2012, a hearing was held before Administrative Law Judge Michael Hellman ("the ALJ"). *Id*. at 34-78. At the hearing, Howard was represented by counsel and an impartial vocational expert testified. The ALJ denied Howard's application for DIB and the Appeals Council denied Howard's request for review, making the ALJ's decision the final decision

for the Defendant, Commissioner of Social Security ("Commissioner"), for purposes of judicial review. On May 27, 2014, Howard filed a timely appeal with this Court.

On November 5, 2015, the undersigned referred this case to Magistrate Judge Mark J. Dinsmore for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). (Filing No. 4.) On December 31, 2015, the Magistrate Judge filed his Report and Recommendation. (Filing No. 24.) On January 12, 2016, Howard filed an Objection. (Filing No. 25.)

**B.     Relevant Medical History**

On her alleged disability onset date of December 30, 2010, Howard was fifty years old and she was fifty-two years old at the time of her hearing. She has a tenth grade education and prior work experience as a production worker on an assembly line making shutters and a team leader position. In 2009, Howard displayed symptoms of chronic obstructive pulmonary disease ("COPD"), asthma, gastroesophageal reflux disease ("GERD"), anxiety/depression, and adjusted disorder. She was hospitalized in October 2010 for four days due to an acute flare up of asthma and acute exacerbation of COPD. In November 2010, she experienced asthma exacerbation that consisted of shortness of breath, wheezing and a minimal cough, and chest tightness. In December 2010, Howard continued to experience these symptoms and used albuterol, an inhaler, four times a day to help the symptoms.

Howard was hospitalized again In January 2011 due to an asthma exacerbation. Her treating physician, Dr. William Li ("Dr. Li"), treated her in March 2011 for a cough and congestion. In July 2011, Dr. Li treated Howard for COPD and respiratory abnormality and opined that Howard "is not likely to be able to return to a work involving dusty environments, temperature extremes or extended physical exertion". (13-1 at 73.)

In August 2011, consultative examiner Dr. David Potts ("Dr. Potts") conducted a pulmonary function test. Dr. Potts diagnosed Howard with severe COPD, asthma, sleep apnea, depression, anxiety, hypertension, and morbid obesity. Dr. Potts opined that Howard could sit for at least two hours, handle objects for at least two hours, and lift or carry more than ten pounds occasionally. (Filing No. 13-1 at 109-10.) In addition, Dr. Potts reported that Howard would be unable to stand or walk for at least two hours or lift or carry less than ten pounds frequently. *Id*.

Also in August 2011, medical consultant Dr. Whitley reported that Howard could perform light work with various postural and environmental limitations. In addition, Dr. Whitley opined that Dr. Potts' restrictions were not supported by the medical evidence of record. *Id*. at 119. In October 2011, medical consultant Dr. Sands affirmed Dr. Whitley's opinion. *Id*. at 122.

### C.     Howard's Testimony

Howard testified to using her inhalers four times per day and her nebulizer three times per day due to daily breathing attacks. (Filing No. 13 at 46-47.) When she would have an attack, it took about fifteen to twenty minutes for her to regulate her breathing. *Id*. She also testified that she could stand for only twenty minutes due to her back pain, and that she was only able to walk "probably about 100 yards" before she experiences a shortness of breath. *Id*. Further, Howard testified that she could only sit for thirty minutes before her back pain resurfaced. *Id*. at 56-57. She would go grocery shopping about once per week, and went on short trips. Howard would make easy meals, and performed chores such as vacuuming small rooms and sweeping the kitchen approximately once a week.

### D.     Vocational Expert's Testimony

During the vocational expert's testimony, the ALJ put forth the hypothetical in which an individual is "limited to the light exertion demands of work." In addition, the ALJ stated that the

individual could not climb ladders, ropes, or scaffolds, but could occasionally climb ramps or stairs, stoop, crouch, kneel, and crawl.  The ALJ stated that the hypothetical individual must also avoid exposure to extreme temperatures, humidity, and environmental irritants such as fumes, odors, dusts, and gases.  When asked if jobs existed in the regional or national economy that this individual could perform, the vocational expert responded that there were a significant number of jobs.  Howard's attorney declined to question the vocational expert.

**E.    ALJ's Decision**

The ALJ first determined that Howard met the insured status requirements of the Act through December 31, 2015, and had not engaged in substantial gainful activity since December 30, 2010, the alleged onset date.  (Filing No. 13 at 21.)  At step two, the ALJ found that Howard's COPD, asthma, obesity, and lumbar disc bulge were severe impairments, as defined by the Act.  *Id*. at 21-23.  However, at step three the ALJ found that Howard did not have an impairment that meets or medically equals one of the applicable listed impairments: Listing 1.04A for Disorders of the Spine, Listing 3.02 for Chronic Pulmonary Insufficiency, and Listing 3.03 for Asthma.  *Id*. at 23-24.

Thereafter, the ALJ determined that Howard had the residual functional capacity ("RFC") to perform "light work" with the exceptions that she should not "climb ladders, ropes or scaffold"; that she should be "limited to occasional crawling, crouching, kneeling, stooping, and climbing of ramps and stairs"; and that she should "avoid concentrated exposure to extreme cold and heat, humidity, poorly ventilated areas, and environmental irritants".  *Id*. at 24.  At step four, the ALJ found that Howard was "unable to perform any past relevant work" because the requirements of her past work "exceeded her residual functional capacity." *Id*. at 28.  Finally, at step five, the ALJ concluded that there were "jobs that exist in significant numbers in the national economy that

[Howard] can perform." *Id*. at 29. Based on these findings, the ALJ concluded that Howard is not disabled, as defined by the Act. *Id*. at 30.

## II. LEGAL STANDARD

### A. Disability Determination

Under the Act, a claimant is entitled to DIB or SSI if he establishes he has a disability. 42 U.S.C. §§ 423(a)(1)(E), 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). To justify a finding of disability, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id*. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's) physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairment or combination of impairments meets or equals the criteria for any of the conditions

included in 20 C.F.R. Part 404, Subpart P, App'x 1 (the "Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. The Listings are medical conditions defined by criteria that the Social Security Administration has pre-determined to be disabling. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); 20 C.F.R. §§ 404.1525(a), 416.925(a). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. For each Listing, there are objective medical findings and other findings that must be met or medically equaled to satisfy the criteria of that Listing. 20 C.F.R. §§ 404.1525(c)(2)-(5), 416.925(c)(2)-(5).

If the claimant's impairments do not meet or medically equal a Listing, then the ALJ assesses the claimant's residual functional capacity for use at steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv). Residual functional capacity is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1).

At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the ALJ determines whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The claimant is not disabled if he can perform any other work in the relevant economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B); 1382c(a)(3)(G). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**B.  Review of the Commissioner's Final Decision**

When the Appeals Council denies review, the ALJ's ruling becomes the final decision of the Commissioner. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Thereafter, the district court will affirm the Commissioner's findings of fact if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Craft*, 539 F.3d at 673; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon*, 270 F.3d at 1176; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). *See also, Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (noting that substantial evidence must be "more than a scintilla but may be less than a preponderance").

In this substantial-evidence determination, the Court does not decide the facts anew, re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Accordingly, if the Commissioner's decision is adequately supported and reasonable minds could differ about the disability status of the claimant, the Court must affirm the decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Ultimately, the sufficiency of the ALJ's articulation aids the Court in its review of whether the Commissioner's final decision was supported by substantial evidence. *See Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985) ("[t]he ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do."). While, the ALJ need not evaluate every piece of testimony and evidence submitted in writing, the ALJ's decision must, nevertheless, be based upon consideration of all the relevant evidence. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Carlson v. Shalala*, 999 F.2d 180,

7

181 (7th Cir. 1993). In this vein, the ALJ may not discuss only that evidence that favors his ultimate conclusion but must confront evidence that contradicts his conclusion and explain why the evidence was rejected. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Further, the ALJ's decision must adequately demonstrate the path of reasoning, and the evidence must lead logically to the ALJ's conclusion. *Terry*, 580 F.3d at 475; *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). Indeed, to affirm the Commissioner's final decision, "the ALJ must build an accurate and logical bridge from the evidence to [his) conclusion." *Zurawski*, 245 F.3d at 888-89; *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

**C.**     **Review of the Magistrate Judge's Report and Recommendation**

A district court may assign dispositive matters to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any findings of fact. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). *See also Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to "accept, reject, or modify" the findings and recommendations, and the district court need not accept any portion as binding. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). *See also Schur*, 577 F.3d at 760-61.

After a magistrate judge makes a report and recommendation, either party may object within fourteen days of being served with a copy of the same. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). When a party raises specific objections to findings and recommendations made within the magistrate judge's report, the district court is required to review those objections *de novo*, determining for itself whether the Commissioner's decisions as to those issues are supported by substantial evidence or were the result of an error of law. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(3). *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The court may, however, defer to those conclusion to which timely objections have not been raised by a party. *Schur*, 577 F.3d at 760-61. Further, if a party fails to object to a magistrate judge's report and recommendation, or objects on some issues and not others, the party waives appellate review of the issues to which the party has not objected. *Johnson*, 170 F.3d at 739.

### III. DISCUSSION

Howard challenges four of the recommendations made by the Magistrate Judge. Specifically, she challenges the ALJ's assessment of the consultative examiner's opinion, the ALJ's evaluation of evidence regarding her nebulizer use, the ALJ's credibility determination, and the ALJ's reliance on the vocational expert's hearing testimony. The Court will review each of these issues *de novo*.

**A.  Medical Opinions**

First, Howard argues that the ALJ erred by affording less weight to the opinion of Dr. Potts, the consultative examiner. Dr. Potts opined that Howard could sit for at least two hours, handle objects for at least two hours, lift or carry more than ten pounds occasionally and she would be unable to stand or walk for at least two hours or lift or carry less than ten pounds frequently. ([Filing No. 13-1 at 109-10](#).)

The ALJ afforded Dr. Potts' opinion limiting Howard to a sedentary work level, "little weight," and articulated the following reasons for his decision:

> [Dr. Potts' assessment] appears to be a statement of the claimant's minimum capacity, and not the most she could do despite her impairments. In addition, Dr. Potts' assessment is rendered less persuasive as he is not a treating practitioner, and only examined the claimant once. Finally, Dr. Potts' assessments appear to be based on the subjective history provided by the claimant.

9

(Filing No. 13 at 27-28.) In contrast, the ALJ gave "great weight" to the opinion of Howard's treating physician, Dr. Li. (Filing No. 13 at 27) and gave "great weight" to the opinions of the state agency reviewing physicians. (Filing No. 13 at 28.)

An ALJ is authorized to reject an examining physician's opinion only for reasons supported by substantial evidence, and a contrary opinion of a non-examining physician does not, by itself, suffice. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). However, an ALJ is required to resolve conflicting evidence from medical experts, giving more weight to some evidence and less to the others. *See Young*, 362 F.3d at 1001. When assessing conflicting medical opinion evidence, an ALJ must consider various factors, "including whether a physician is a treating or examining physician; the length, nature, and extent of the treatment relationship; the physician's specialty; and the consistency and supportability of the physician's opinion." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); 20 C.F.R. § 404.1527(c), 20 C.F.R. § 416.927(c).

Because Dr. Potts is an examining physician, rather than a treating physician, the ALJ was entitled to consider Dr. Potts' opinion to be "less persuasive". Indeed, the applicable regulations explain as follows,

> [g]enerally, *we give more weight to opinions from treating sources*, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that *cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examination*s . . .

20 C.F.R. § 404.1527(c) (emphasis added); 20 C.F.R. § 416.927(c) (emphasis added).

Further, the Magistrate Judge correctly noted that the ALJ found conflicts between the opinions of the various medical professionals and weighed them with adequate articulation. For

instance, based on the opinion of Howard's treating physician, which the ALJ considered "consistent with the overall evidence of record", the ALJ restricted Howard from working in dusty environments and in temperature extremes and restricted him from partaking in extended physical exertion. (Filing No. 13 at 27.) Additionally, the ALJ gave "great weight" to the opinions of the state agency physicians, noting that those opinions similarly restricted Howard to light work. (Filing No. 13 at 28.) In contrast, the ALJ noted the discrepancies in Dr. Potts' opinion, considering the opinion to be "a statement of the claimant's minimum capacity, and not the most she could do despite her impairments". (Filing No. 13 at 28.) In this regard, the ALJ adequately fulfilled his duty to resolve conflicting evidence from medical experts, doing so with sufficient explanation and support. *Compare Young*, 362 F.3d at 1001 (upholding an ALJ's decision to give less weight to the opinion of an examining physician, when it conflicted with the opinions of several other examining and non-examining physicians).

Contrary to Howard's contention, the ALJ adequately supported and sufficiently explained his reasons for affording Dr. Potts' opinion less weight, properly exercising his authority to resolve conflicts in competing medical opinions and to give more weight to some evidence than others. Accordingly, Howard's objection with regards to this issue is overruled.

**B.      RFC Determination**

Next, Howard argues that the ALJ failed to account for her use of a nebulizer in his RFC determination. Residual functional capacity is an assessment of the work-related activities a claimant is able to perform on a regular and continued basis despite the limitations imposed by an impairment or combination of impairments. *Young*, 362 F.3d at 1000; 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8p. This finding must be assessed based on all the relevant evidence in the record and must be supported by substantial evidence. *Clifford*, 227 F.3d at 873; 20 C.F.R. §

404.1545(a)(1).

In his decision, the ALJ acknowledged Howard's use of both a nebulizer and inhaler to treat her asthma. (Filing No. 13 at 25.) However, Howard argues that the ALJ failed to factor in the use of her nebulizer as part of his RFC determination. In this regard, Howard testified that she has 2-3 "breathing attacks" on a daily basis, requiring her to "*either* hit the nebulizer *or* go for [her] rescue ProAir." (Filing No. 13 at 47-48.) (Emphasis added.) Howard testified that it takes her 15-20 minutes to recover from a breathing attack. (Filing No. 13 at 47.) She also pointed to a list of her prescriptions, wherein it indicates that she uses one vial of Ipratroprium-Albuteral "in a Nebulizer 4 times a day". (Filing No. 13-1 at 191.)

The Magistrate Judge considered the ALJ's RFC decision to be sufficiently supported, noting that, while Howard was prescribed an inhaler and nebulizer to treat her asthma, there is no indication in the record that Howard was required to use *both* of these treatments. (Filing No. 24 at 6.) In support, the Magistrate Judge cited portions of the record wherein the nebulizer treatments were prescribed on an "as needed" basis. (Filing No. 13-1 at 13, 15.) Additionally, in her own testimony, Howard explained her use of the nebulizer as an alternative option to her inhaler. (Filing No. 13 at 47-48.)

Given that both the record evidence and Howard's testimony do not clearly indicate that Howard was required to use a nebulizer for 15-20 minutes, three times a day, as alleged in her brief, the ALJ did not err by not specifically discussing or including this purported limitation. Indeed, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Haynes*, 416 F.3d at 626; *Diaz*, 55 F.3d at 309. Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Rice*, 384 F.3d at 371; *Berger*, 516 F.3d at 545. The ALJ has done so here.

Howard's argument appears to be an attempt to convince this Court to reweigh the evidence, something it cannot do. *See Overman*, 546 F.3d at 462; *Lopez*, 336 F.3d at 539. The ALJ has adequately considered and substantially discussed the evidence supporting his RFC determination, and the limiting effects of Howard's respiratory conditions in particular. (*See* Filing No. 13 at 25-26.) Because the ALJ has provided an adequate discussion of the evidence and the ALJ's conclusions are supported by the record evidence, the Court is not at liberty to overturn the factual findings of the ALJ. *See Haynes*, 416 F.3d at 626 (noting that a reviewing court is deferential to the ALJ's factual findings, does not substitute its own opinion for that of the ALJ, and does not re-weigh the evidence); *Rice*, 384 F.3d at 369 (explaining that when reviewing an ALJ's decision, the court will "give the opinion a commonsensical reading rather than nitpicking at it.").

The Court agrees with the Magistrate Judge's determination that the ALJ's RFC decision was substantially supported by the record evidence and Howard's objection with regards to this issue is overruled.

**C.      Credibility**

Howard also argues that the ALJ improperly discounted her credibility. Because the ALJ is in the best position to observe witnesses, an ALJ's credibility determination will not be upset on appeal if it is supported by some record evidence and is not "patently wrong". *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1995); *see also Elder*, 529 F.3d at 413-14 ("[i]t is only when the ALJ's determination lacks any explanation or support that we will declare it 'patently wrong'"); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("[o]nly if the trier of facts grounds his credibility finding in an observation or argument that is unreasonable or unsupported can the finding be reversed"). However, as a minimum, an ALJ must articulate specific reasons to support

13

his credibility finding. *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003); SSR 96-7p. For instance, while an ALJ is not required to provide a complete written evaluation of every piece of testimony and evidence, an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. *Id*.

In his opinion, the ALJ provided several reasons for discounting Howard's credibility. (*See* [Filing No. 13 at 27](Filing No. 13 at 27).)  The ALJ noted that Howard's testimony about her daily activities shows that her symptoms "are manageable and not as limiting as alleged". *Id*. In addition, the ALJ noted that diagnostic lumbar branch blocks provided 80% relief, "suggest[ing] relative success with pain management treatment". *Id*. Further, the ALJ noted that Howard's "decision to forego [sic] physical therapy despite a treating physician recommendation suggests that her back pain may not be as limiting as alleged, and detracts from her overall credibility". *Id*.

While Howard disagrees with these justifications for discounting her credibility, she has not shown that these justifications are "patently wrong" to justify remand on this issue. *Herron*, 19 F.3d at 335 (7th Cir. 1995). Each of these reasons are adequately explained and sufficiently supported by evidence in the record. As such, the Court does not find that the ALJ's decision amounts to "patent error".

Indeed, the ALJ based his credibility determination on several factors, each of which is sufficient to justify his decision. *See* 20 C.F.R. § 416.929(c)(3) (outlining the types of evidence considered when making a credibility determination, including: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures other than

treatment the claimant uses or has used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms); *see also* SSR 96-7p.

As a result, the Court agrees with the Magistrate Judge that the ALJ sufficiently explained and supported his credibility determination, and Howard's objection with regard to this issue is also overruled.

**D.      Step Five Analysis**

Finally, Howard contends that the ALJ improperly relied on the vocational expert's testimony. At step five, the ALJ considers numerous factors, such as: the claimant's RFC, age, education, and work experience, to see if the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). If a claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. *Id*. However, if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. *Id*. At this step, the ALJ often utilizes the testimony of a vocational expert, proffering hypothetical questions consistent with the ALJ's RFC findings. To the extent the ALJ relies on the testimony from a vocational expert, the hypothetical question posed to the expert must incorporate all relevant limitations from which the claimant suffers in order to accurately gauge how many jobs are available to the claimant in the national economy. *Young*, 362 F.3d at 1003.

Howard does not challenge the accuracy of the hypothetical. The ALJ provided a hypothetical to which the VE explained all prior work would be eliminated but other jobs would remain as a ticket taker (DOT#344.677-014)(2,000 jobs locally), cashier II (DOT#211.462-010)(10,000 jobs locally) which he would reduce to 50 percent. The VE affirmed that his testimony was consistent with the information in the Dictionary of Occupational Titles (DOT), but he did not

rely solely on the information in the DOT in testifying about the number of available jobs. The VE explained that he was also relying on his own experience performing job analyses and was giving Howard the benefit of the doubt in reducing the job numbers by 50%.

Howard argues that the vocational expert did not provide a foundation for his testimony, and that the ALJ failed to "question[] where the[] job numbers derive". (Filing No. 25 at 6.) When a vocational expert provides testimony about the requirements of a specific occupation, the ALJ has an affirmative duty to ask whether the testimony conflicts with the Dictionary of Occupational Titles (the "DOT"). *Overman*, 546 F.3d at 462-63; *Hofer v. Astrue*, 588 F. Supp. 2d 952, 966 (W.D. Wis. 2008). Howard asserts that when there is an apparent conflict between the vocational expert's testimony and the information provided in the DOT, the ALJ has an affirmative responsibility to obtain a reasonable explanation for the apparent conflict. *Overman*, 546 F.3d at 462-63; *Hofer*, 588 F. Supp. 2d at 966; SSR 00-4p.

However, where claimant's counsel does not identify a conflict at the hearing, the claimant must show that the conflict was obvious enough that the ALJ should have picked up on it without any assistance. *Overman*, 546 F.3d at 462-63; *Hofer*, 588 F. Supp. 2d at 966-67. The ALJ may rely on the bottom-line numbers provided by a vocational expert if the claimant does not challenge the basis of that testimony at the hearing. See *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009). Had Plaintiff questioned the VE about his methodology, the VE would have been able to explain how he arrived at his conclusions.

As the Magistrate Judge correctly noted, Howard's attorney did not raise an objection to the vocational expert's testimony at the hearing nor did Howard's attorney cross-examine the vocational expert to elicit conflicting evidence, thereby waiving the argument of unreliability on appeal. *See, e.g.*, *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("[w]hen no one

questions the vocational expert's foundation or reasoning, an [ALJ] is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the [DOT]"); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("because [the claimant's] lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it is forfeited"); *Hofer*, 588 F. Supp. 2d at 966-67.

Finally, contrary to Howard's assertion, the ALJ specifically asked whether the VE's testimony was "otherwise consistent with the DOT" (Filing No. 13 at 74) to which the vocational expert responded, "[i]t is". *Id*. Accordingly, Howard's argument is also inconsistent with the record evidence. *See also Hofer*, 588 F. Supp. 2d at 965-66 (explaining that the ALJ may rely upon information in the DOT and noting that the Social Security Administration has taken administrative notice of the DOT's job data); 20 C.F.R. § 404.1566(d)(1); 20 C.F.R. § 416.966(d)(1). For these reasons, Howard's objection with regard to this issue is also overruled.

## IV. **CONCLUSION**

For the reasons stated above, the Court **OVERRULES** Howard's Objection (Filing No. 25), **ADOPTS** the Magistrate Judge's Report and Recommendation (Filing No. 24), and **AFFIRMS** the Commissioner's final decision. Final judgment will be issued by a separate order.

**SO ORDERED.**

Date: 3/22/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Meredith E. Marcus
DALEY DISABILITY LAW, PC
mmarcus@fdaleylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov